Thank you both for your argument in this case. That was helpful. The next matter on for argument in this case is Patrick Stalder v. Martin O'Malley, 24-370. And each side has a total of 10 minutes. Good morning. Good morning, Your Honors. Christopher Dellert representing Katherine Stalder, the appellant in this case. I would like to reserve two minutes for rebuttal if necessary. At issue in this case is whether the administrative law judge's decision denying Ms. Stalder's claim for benefits was supported by substantial evidence. She's alleged disability from a combination of physical and psychological impairments. In evaluating the evidence, the administrative judge disregarded her chronic pain syndrome, which was an independent cause for many of the symptoms that she has alleged. Well, let me ask you this. Even if we agree that the ALJ erred by not specifically addressing the chronic pain syndrome, why is it the error not harmless because the ALJ stated it considered all of your client's symptoms? But his analysis of these symptoms was based on comparing the evidence, her allegations versus the evidence related to her lumbar. Well, but if all of the symptoms, whether you call it they amassed a chronic pain, but the ALJ did consider all of the symptoms in deciding, so why isn't it just harmless? Or do the symptoms of chronic pain syndrome overlap with the symptoms of her other impairments like fibromyalgia? I mean, she has a lot of things wrong with her, and they considered all of those, so the fact that the words chronic pain was not used, why is that not harmless error? Because many of the bases that she did rely on involved the other physical, more objectively documented impairments, but she continued to have symptoms that were unrelated to those even after her lumbar surgery. Okay, so what are the symptoms of chronic pain syndrome that the ALJ did not address, if any? In here, she has demonstrated she has significant muscle spasms and tonicity in her shoulders and neck that are related to that. She gets monthly trigger point injections for those symptoms, but even with that, she remains limited in her ability to just perform daily activities. Any excessive activities lead to an exacerbation of those symptoms, further limiting her, so that would prohibit her from performing. Well, did the ALJ not consider those symptoms? He didn't directly do that. To suggest that he considered that as the basis for those is making our own judgment or making our own interpretations of things that he hasn't discussed, and we have to rely on what he actually discussed within his decision. Well, you're tap dancing, as it were, as a tap dancer. It's, did he consider those symptoms? I don't believe that he did consider those particular symptoms. But he said he considered all the symptoms, and that was testimony. Other than that general statement, did he explicitly address muscle spasms? Did the ALJ anywhere in the opinion specifically address muscle spasms, her treatment needs, the effects of activity on her chronic pain? No, he didn't mention the muscle spasms, the tonicity, the knots that she would get in her shoulders that led her to continually seek out the trigger point injections, the oxycodone, and other treatments that she was taking specifically for her chronic pain syndrome as her treating physician was acknowledging that that was a factor in her pain and other symptoms. In addition to the chronic pain syndrome, the administrative law judge failed to specifically address her issues interacting appropriately with other people. The record documents numerous instances where any time that she felt disrespected or unheard, or where she was not getting the treatment or response that she was asking for, she reacted with anger and aberrant behaviors that would impact her ability to sustain employment. Even with limited interactions, if she felt that her coworkers were disrespecting her, even if they weren't, she would react with anger, she might leave the workplace. That is demonstrated time and again in her interactions with her medical teams. Is that part of the chronic pain syndrome or is that something else? This is part of her, among her psychological impairments is one of the symptoms of those. It's part of her PTSD and her ADHD. Those lead her to not respond well to any kind of stressors. Well, did the ALJ consider those? He considered the impairments, but he never specifically addressed these symptoms. He never specific, he didn't address those symptoms specifically. And he did address things that focused on her cognitive abilities and ability to attend work with her depression and that, but he never specifically detailed the, what is it, her interactive behaviors. And without knowing that he's, the only time he ever mentioned it was saying that she had enjoyed some time with family and friends on one occasion. And that was an occasion where she was escaping an abusive relationship and was not under the same stresses. But the record, again, documents numerous occasions where... Well, you acknowledge the fact, though, that the ALJ can resolve them differently than you would like the ALJ to. But the ALJ has to consider them. And so I'm looking for, I think your argument's a little better on the chronic pain syndrome, but I'm not seeing in the record that this wasn't considered, this evidence wasn't considered. Her PTSD, her ADHD, all of those things were considered as part of what her limitations were. But he didn't address the specific, her ability to interact appropriately. He addressed other aspects of how that impacted her, but he never addressed the specific symptoms. And case law has shown, has said that you have to say which evidence undermines which symptom reports. And he never addressed that except for that one instance. And that one instance isn't substantial evidence when compared against the rest of the evidence in the record as a whole. Okay. All right. Thank you. You want to reserve the balance of your time? Yeah, I would reserve any other time. Okay. Thank you. Good morning. Good morning, Your Honors. Michelle Pavlik on behalf of the Commissioner for Social Security. It would be helpful if you would jump into the appellant's chronic pain syndrome. Absolutely, Your Honor. Because I think, I can't speak for my colleagues, but that would be, because we don't conference on these cases before we come, but that might be his strongest argument. Your Honor, as you pointed out, the underlying cause of the symptoms is really not what's at issue in the ALJ's decision. What's at issue are the limitations that flow from all of the different causes. Let me ask you something. I think share Judge Callahan's sentiment that chronic pain syndrome is his best argument in this case. I don't have a medical expertise. That's why we review these things deferentially. But what I do know is that chronic pain syndrome is an independent medical impairment that has apparently both physical as well as psychological manifestations. And in other contexts, the agency has found that chronic pain syndrome is a severe condition at step two. As you acknowledge, in your briefing, the ALJ didn't do that in this case. So when I look at the ALJ's decision, and the ALJ found that there are certain conditions that are severe, many of these conditions have pain manifested as part of that condition. And then what we call the catch-all conclusion of, I've considered everything, I can't tell from this record whether the ALJ considered chronic pain syndrome, when he said, I've considered everything, whether he considered chronic pain syndrome symptoms, both from a psychological perspective as well as physical manifestation perspective, or whether the analysis, I've considered everything, only refers to the conditions that he did find to be severe at step two. And so I find myself having to speculate somewhat and draw some inferences that may not be there in the record. This isn't like other ALJ decisions I reviewed where the discussion may fall short or be lacking in some details and we can tell that everything was considered. I can't tell from this record. So help me with that. Absolutely, Your Honor. Well, first, I would say that it's analogous to Birch, where obesity was not found as a severe condition, and yet the claimant did not allege any additional limitations flowed from obesity. And in that case, the severe condition, the lack of articulation at step two was a harmless error. It was not prejudicial because the ALJ considered all of the limitations flowing from all of the various conditions. Right. References to other cases really aren't helpful to me because it's really fact-specific. Like on this record, is there something in here that tells me I've considered everything, includes chronic pain syndrome, which was not discussed at step two at all, and not really considered in the residual functioning capacity analysis. So that's why I say that this record looks a little different than others in which we found harmless error. Your Honor, the ALJ mentions the claimant's pain 16 times in his analysis. He mentions the claimant's pain when looking at her subjective complaints. He mentions it when he's reviewing the medical evidence. But he did discount her testimony because he found that it was not supported by the medical evidence, and yet we have no—and we're only allowed to rely on what the ALJ actually said. So here the ALJ just did not address chronic pain syndrome explicitly or specifically at all. And there are symptoms and impacts from that syndrome that are independent of the things that he did consider. So I don't know how we can know that his discounting of her testimony is proper when he didn't engage at all with the records related to her chronic pain syndrome. Well, Your Honor, I would disagree that he didn't engage with the records. He clearly engaged with the records. Specific to the chronic pain syndrome treatment? Yes, Your Honor. As I can see it, I don't see any records that the claimant has pointed to that are specific to chronic pain syndrome that the ALJ did not consider. Well, did the ALJ consider chronic pain syndrome in the residual functional capacity assessment? Clearly he did, Your Honor. Well, did he—well, tell me where in the record it says he considered chronic pain syndrome. If you look to the various opinions and the various functional assessments— All right. Let's—okay. To me, you're arguing why it might not be harmless. Is chronic pain syndrome listed in the residual capacity assessment? Your Honor, I respectfully would like to say that I'm not arguing that it's harmless when I look at the opinions because the ALJ specifically— Is that—is chronic pain syndrome, which is a syndrome, is it listed in the residual capacity assessment? I'm not sure I understand what you mean by listed. Those words. Those words. I am considering that she has chronic pain syndrome. I'm considering she has PTSD. I'm considering this. Is chronic pain syndrome mentioned in the residual capacity? Chronic pain syndrome is not mentioned in the decision. However, there is no rule that the ALJ is required to mention every single ailment that a claimant has. I'm not discounting that the claimant has chronic pain syndrome, and Dr. Rubio and Dr. Wolfe both assessed the claimant and acknowledged very specifically that she had chronic pain syndrome and also included fibromyalgia in their acknowledgement of her conditions. And however, I would like to emphasize that fibromyalgia is not— Fibromyalgia is fibromyalgia. Easy for me to say. Fibromyalgia is that, if you had a Venn diagram, is chronic pain syndrome and fibromyalgia, is it all one? No, Your Honor. They are quite distinct, and they are distinct not only medically, they are distinct in the law specifically. And those very magical attributes that people have attributed to fibromyalgia do not translate to chronic pain syndrome. They're not the same. And I'd like to emphasize that chronic pain syndrome is not a medically determinable impairment in this case. So the ALJ was not required to and did not consider that.  So you're saying it's never medically determinable, and you're saying it wasn't in this case? It was not in this case. So if the ALJ made that assessment, didn't he have to explain why? He did explain why it's not a medical— For chronic pain syndrome? Again, Your Honor, the key element here is, did the ALJ consider all of the claimant's symptoms and the limitations flowing from those symptoms? And the ALJ did that here. What specifically would you say, rather than your assertion? What words in the ALJ opinion would you quote to us as saying, this shows us he considered chronic pain syndrome and made a reasoned decision supported by substantial evidence to either say that it's not medically determinable or that the symptoms should be discounted? I would say, Your Honor, that there's no specific requirement that he do that. But I would also say, Your Honor— In all fairness, you've acknowledged that in your briefing that the ALJ did not discuss chronic pain syndrome specifically, right? That is correct. So correct me if I'm wrong on the record, but as I recall, she was found to be disabled sometime back in 2010, 2011 or so for a number of conditions, including fibromyalgia, but not chronic pain syndrome. No, including chronic pain syndrome, that's not correct. She had both in the record in 2011, both fibromyalgia and chronic pain syndrome. She was being treated for both. She was found disabled based on chronic pain syndrome back in 2011. Because I recall that in her prior grant of disability, that was not one of the impairments that was considered severe. But then she began to get treated for that. She gained—I guess she was well enough to start working again, so she lost her disability benefits. And then sometime later, seven, eight years later, she began to be treated for chronic pain syndrome. Your Honor, she was treated for chronic pain syndrome starting as early as 2011, and that is in the record. I do not recall if it was a specific named impairment in that first, but that ALJ was required to consider all of the symptoms flowing from all of her things. I would still like an answer to my question, because I think at times I hear you saying the ALJ did consider chronic pain syndrome, and that's evident from the opinion. And then when I asked you to tell me where, you said he wasn't required to, which is that he did do it or he didn't and was not required to. Your Honor, he did not specifically name chronic pain syndrome. However, he found Dr. Ridgeway's opinion was unpersuasive and Dr. Rubio's opinion was persuasive, and specifically Dr. Rubio, who considered both the chronic pain syndrome and fibromyalgia, which again I'd like to emphasize was not a medically determinable impairment in this case. Dr. Rubio put the claimant—and this is before her back surgery—back to light work, considerably more exertion. That physician looked at the record, specifically considered both impairments that you're concerned with. The ALJ only found Dr. Rubio's opinion partially persuasive, and the reason very specifically was based solely on the claimant's testimony. The ALJ took the claimant's subjective statements about her symptoms and found that she was only able to do sedentary work. And I do believe that that is evidence that the ALJ very seriously considered all of her symptoms, including her chronic pain syndrome. You're out of time. I don't—any additional questions from the panel? They're not. Thank you. I just wanted to address one thing really quickly. The administrative judge did discuss in rejecting plaintiff's symptoms— Can you—you're kind of mumbling. Oh, sorry. Can you go into the speaker there? Sorry. The administrative judge did address Ms. Salter's pain on two different occasions in the decision when addressing the latter evidence and as well when addressing Dr. Ridgeway's. And in both occasions, he found that the allegations were inconsistent with evidence related to her lumbar impairments and the lack of intagic gait and things like that, which doesn't address the symptoms that we're discussing more related to her upper back. He compared her—he mentions she had the shoulder pain, but then goes into talking about her lumbar impairment, which are two totally separate things. So the pain from the chronic pain syndrome, which is creating the tonicity, the muscle knots, the spasms that are causing pain, are not addressed specifically in the judge's decision. He never mentions chronic pain syndrome. Am I correct that she wasn't diagnosed with chronic pain syndrome until 2019? That is—I mentioned in my brief when it was first— when I saw the first diagnosis in the record, but I don't know. We don't have earlier records to determine if it was a—if it preexisted even then. It's in the record. I don't have it noted on that. But other than that, if there are no other questions— All right. Thank you. All right. Thank you both for your argument. This matter stands submitted.
judges: CALLAHAN, NGUYEN, SUNG